IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| M.K.,<br><br>        Plaintiff,<br><br>v.<br><br>VISA CIGNA NETWORK POS PLAN,<br><br>        Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>**Case No. 1:13CV73DAK**<br><br>**Judge Dale A. Kimball** |

This matter is before the court on Plaintiff M.K.'s appeal of Defendant Visa Cigna Network POS Plan's denial of medical benefits under an employee benefits plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*. On September 10, 2014, the court held a hearing on the appeal. At the hearing, Plaintiff was represented by Lisa S. Kantor, and Defendant was represented by Jack M. Englert and James L. Barnett. The court took the matter under advisement. Having fully considered the evidence in the administrative record and law relevant to the appeal, the court enters the following Memorandum Decision and Order.

### BACKGROUND

In this case, M.K. appeals Defendant's denial of medical benefits for residential treatment of an eating disorder and mental health problems. M.K.'s father works for Visa Inc. and is a participant in Visa's medical benefit plan, the Visa Welfare Benefits and Cafeteria Plan ("The Plan"). M.K. is a qualified dependent on the Plan. The Plan encompasses several different

component plans including the POS Plan, which provides for mental health benefits. The benefit claims at issue in this case arise under the POS Plan.

The official plan document establishes the basic terms relating to enrollment, eligibility, and administration of the Plan and incorporates by reference the Summary Plan Descriptions ("SPDs") of the component benefits plans. Accordingly, the plan documents relevant to M.K.'s claim are the official plan document and the POS Plan's Summary Plan Description.

The Plan Administrator is the Visa Global Head of Human Resources or any claims administrator that the Plan Administrator has appointed to perform any function under the Plan. Connecticut General Life Insurance Company is the claims administrator of the POS Plan, and Cigna Behavioral Health manages the mental health benefits under the POS Plan. Both of these entities are claims administrators delegated to determine claims under the POS Plan.

The Plan Administrator, including Cigna, has "full power, discretion, and authority to administer the Plan and to construe and apply all of its provisions. Cigna, as the claims administrator with delegated responsibility for the administration of the POS Plan, is responsible for "[a]dopting rules and regulations for the administration of the Plan that are not inconsistent with applicable law."

The POS Plan's SPD requires that a participant obtain prior authorization for any services. Benefits are available only for medical services and supplies that are "medically necessary." A "medically necessary" service is: required to diagnose or treat an illness, injury, disease, or its symptoms; in accordance with generally accepted standards of medical practice; clinically appropriate in terms of type, frequency, extent, site, and duration; not primarily for the convenience of the patient, physician, or other health care provider; and rendered in the least

intensive setting that is appropriate for the delivery of the services and supplies.

On June 6, 2011, M.K.'s father called Cigna to inquire about admitting M.K. to Avalon Hills for residential treatment in its Eating Disorder Residence Program. This represented the first request for the approval of any level of treatment of M.K. for eating disorders. At that time, M.K. was 14 years old.

At the age of 13, M.K.'s parents noticed that M.K. became obsessive about calorie counting, would only eat food that she put on her own plate, and gave herself the portion sizes of a two-year-old. She also began engaging in periods of binge eating and various methods of purging her body of the food. She began self-inducing vomiting, taking excessive doses of laxatives, and engaging in excessive exercising. M.K. also began experiencing multiple symptoms of depression and anxiety, which became a significant interference in her life.

M.K. met with her school guidance counselor in December 2010. The counselor then contacted her parents, and M.K. and her parents met with the school counselor in January 2011. During this meeting, M.K. admitted she was bulimic. The school counselor referred M.K. to residential treatment. However, M.K. was not seen by any physical or mental health professionals at that time or during the next 5 months.

On June 6, 2011, M.K.'s father called Cigna to ask if Avalon Hills qualified as an in-network facility because he believed that M.K. needed inpatient residential treatment. The Cigna representative told him that it was an out-of-network facility. Cigna explained its Level of Care Guidelines, medical necessity requirement, and preauthorization process. M.K. father stated that M.K. was purging several times a day, but he also reported that M.K. was within normal limits for her weight, was not medically compromised by the eating disorder, had not previously tried

3

mental health treatment, and had not verbalized any risk of harm to herself or others.

Cigna referred M.K.'s father to in-network outpatient providers. When he declined that referral, Cigna provided a referral to an in-network facility. He also rejected that referral and stated that he would continue with Avalon Hills and see what they would offer for a discount.

Two days later, on June 8, 2011, Avalon Hills called Cigna to note M.K.'s admission on June 7, 2011. Avalon Hills requested authorization for mental health residential treatment. A Cigna specialist reviewed the information received about M.K. and prepared a summary. Cigna listed the various reported behaviors and symptoms and noted the absence of any treatment history, medical issues, medication, or suicide attempts, and that M.K. was above her ideal body weight.

The Cigna specialist referred the file for a physician peer review based on: "[M.K.] has no previous [eating disorder] care and there [are] no current medical issues warranting 24 hr. care. [M.K.] has some restrictions and purging behaviors but is not at [risk of harm] or [chemical dependency] issues present. [M.K.] has no [history] of any [mental health/eating disorder/chemical dependency] treatment. The Case Manager [had] offered [partial residential treatment eating disorder] care and facility [which M.K.'s father] declined. There is an in-network fac[ility] in the home area with all [eating disorder] levels of care."

Also on June 8, 2011, Cigna arranged a telephone conference between M.K.'s physician at Avalon Hills, Dr. Sarah Boghosian, and Dr. Marendra Patel, a Cigna on-staff Board Certified Psychiatrist. Dr. Patel spoke with Dr. Boghosian and reviewed the claim. Dr. Patel concluded that the inpatient residential treatment was not medically necessary. Dr. Patel determined that M.K. did not need 24-hour supervision and could be treated through a partial hospitalization

4

program to learn coping skills to deal with binging, purging, and restricting.  He found that she was medically stable, her blood pressure and pulse were within normal range, she was not voicing any thoughts of harm to self or others, was capable of caring for her needs, and had a supportive family.

The next day, on June 9, 2011, Cigna issued its initial determination that the requested treatment would not be covered because it was not medically necessary.  Cigna stated the clinical basis of Dr. Patel's decision, instructed M.K.'s parents how to access Cigna's applicable guidelines on the Internet, and provided information on M.K.'s appeal rights.

On June 10, 2011, Avalon Hills informed Cigna of its intention to request a Level I Appeal Review of the medical necessity determination.  However, later that day, it withdrew the appeal and indicated that it may request an appeal in the future.  Five months later, on November 22, 2011, M.K.'s lawyer submitted an appeal with copies of M.K.'s treatment records at Avalon Hills and a psychological evaluation by Kyle Max Hancock.

For the appeal, Cigna referred the file to Dr. Moshin Qayyum, an on-staff Board Certified Psychiatrist.  Dr. Qayyum reviewed the records and concluded that M.K.'s symptoms did not meet Cigna's guidelines.  He found that M.K. was not in need of highly structured supervision to maintain or gain weight, was not engaging in purging behaviors of a severity to put her at a risk of medical complications, and appropriate treatment was available at a less restrictive level of care.

## DISCUSSION

M.K. argues that Cigna wrongfully denied her claim for medical benefits.  Before reaching the merits, the parties dispute the applicable standard of review.

**I. Standard of Review**

The parties dispute whether the case should be reviewed under a de novo standard or the arbitrary and capricious standard. ERISA itself does not specify the standard of review that should be used. However, the United States Supreme Court has held that a denial of benefits challenged under ERISA, "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When the plan grants discretionary authority to the administrator, the denial of benefits is reviewed under the "arbitrary and capricious" standard. *Chambers v. Family Health Corp.*, 100 F.3d 818, 825 (10th Cir. 1996).

In this case, the language of the Plan clearly gives the claim administrators "discretionary authority to determine benefit eligibility." Cigna is the Plan Administrator for mental health benefit claims under the POS Plan. Based on this grant of authority, the court applies the arbitrary and capricious standard of review.

M.K., however, argues that Defendant is not entitled to deferential review on appeal because of procedural irregularities and Cigna's conflict of interest. With respect to procedural irregularity, M.K. contends that the Plan requires the "medically necessary" determination to be made by a "Medical Director" and no Medical Director was used. M.K.'s denial letter was written by the Appeals Coordinator, and the appeal denial was written by a Business Project Analyst. The two physicians who reviewed M.K.'s files were referred to as Peer Reviewers not Medical Directors. Therefore, M.K. asserts that the denial was procedurally improper and is not entitled to deferential review by this court.

6

Defendant argues that the alleged procedural irregularity is only a matter of semantics and elevates form over substance. The court agrees. Although medical necessity determination is made by a Medical Director, the Plan clearly states that the claim administrator will notify a claimant of an adverse claim determination. Cigna, as claim administrator, referred the medical necessity determination to on-staff Board Certified Psychiatrists. Cigna then notified M.K. of their determinations. Cigna does not have a specific Medical Director. The term applies to on-staff medical personnel qualified to make the determination. Therefore, the fact that Cigna called the on-staff board-certified psychiatrists Peer Reviewers instead of Medical Directors made no substantive difference in the review process. Cigna complied with the requirement that a qualified medical professional render the medical necessity determination. Therefore, the court concludes that there is no procedural irregularity that would warrant a change in the deference afforded the decision.

M.K. further asks the court to consider the claim administrator's conflict of interest. The Tenth Circuit has said that although the arbitrary and capricious standard requires the court only to ask whether the interpretation of the plan was reasonable and made in good faith, courts dial back deference if an administrator is operating under a conflict of interest. "In such a situation, that 'conflict should be weighed as a factor in determining whether there is an abuse of discretion.'" *Weber v. G.E. Life Assur. Co.*, 541 F.3d 1002 (10th Cir. 2008).

M.K. admits that Cigna does not have a direct conflict of interest. In this case, Visa has self insured the plan and Cigna acts only as a claims administrator. Courts have repeatedly held that a *Glenn* conflict of interest does not exist in such a case.

However, M.K. claims that Cigna has an indirect conflict because third-party

7

administrators of benefit plans have a financial incentive to maintain their contractual arrangements with benefit plans by reducing costs of the programs they administer. Visa is a large and important client for Cigna. However, M.K. must do more to show a conflict of interest than assert that Visa is an important client for Cigna and Cigna has a financial incentive to keep costs down to keep Visa as a client. "Asserting a conflict based on a generalized economic incentive, such as attracting more business through denial of claims, without more, is 'insufficient to rise to the level of a legally cognizable conflict of interest.'" *Eugene S. v. Horizon Blue Cross Blue Shield*, 663 F.3d 1124, 1133 (10th Cir. 2011). Therefore, M.K. has not demonstrated a conflict of interest that would impact the arbitrary and capricious standard of review.

Under the arbitrary and capricious standard of review, a court "will uphold the decision of the plan administrator 'so long as it is predicated on a reasoned basis,' and 'there is no requirement that the basis relied upon be the only logical one or even the superlative one.'" *Eugene S.*, 663 F.3d at 1134. The court "'need only assure that the administrator's decision fall[s] somewhere on the continuum of reasonableness – even if on the low end.'" *Id.* (Citation omitted). An administrators decision is reasonable if it is based on substantial evidence in the administrative record. *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1282 (10th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance" of evidence. *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 382 (10th Cir. 1992).

## II. Merits

The Plan provides for residential treatment for mental health conditions if it is medically necessary. Therefore, the issue before the court is whether Cigna reasonably concluded that

M.K.'s treatment at Avalon Hills was not medically necessary. Under the Plan, treatment is medically necessary if it is (1) required to diagnose or treat an illness, (2) in accordance with generally accepted standards of medical practice, (3) clinically appropriate, (4) not for the convenience of the patient, and (5) rendered in the least intensive appropriate setting.

M.K. arguments focus on the appropriateness of the 24-hour residential treatment at Avalon Hills. However, the court's task is not to determine only whether the 24-hour treatment was clinically appropriate. The definition of "medically necessary" involves four additional criteria. In fact, in this case, the critical issue appears to be whether the treatment was rendered in the least intensive appropriate setting.

When M.K.'s father contacted Cigna about his proposed admission of M.K. to Avalon Hills, M.K. had never received any treatment for bulimia or mental health problems and, as such, had no diagnosis from any medical or mental health professional. M.K.'s father identified several factors that did not support 24-hour residential treatment as the first option. M.K.'s weight was within normal limits and he stated that she was not suicidal. The Cigna representative attempted to direct M.K.'s father to less intensive treatment. However, M.K.'s father rejected Cigna's attempts to refer M.K. for any other kind of treatment, even rejected an in-network residential treatment program, and insisted that M.K. would be admitted at Avalon Hills.

M.K. was admitted at Avalon Hills the day after M.K.'s father spoke to Cigna on the telephone. Cigna received the claim upon M.K.'s admission to Avalon Hills and it had a Board Certified Psychiatrist speak to the physician at Avalon Hills. Based on the information received, the Board Certified Psychiatrist determined that M.K.'s "urge to purge" could be treated with a

lower level of care, such as a partial hospitalization program. Relying on this analysis, Cigna denied M.K.'s claim within three days of receiving the claim.

The court finds it significant that M.K. never had any treatment for eating disorders or mental health issues prior to 24-hour residential treatment. M.K.'s father was not qualified to make the medically necessary determination to admit his daughter to 24-hour residential treatment. M.K.'s father simply refused to listen to any other alternative. Both parties to this case were put in a difficult position because of the lack of any treatment prior to M.K.'s admittance at such a high level of care. There is no evidence from a regular treating physician as to a proper course of treatment. Once M.K. was admitted to Avalon Hills, Avalon Hills supported M.K.'s residential treatment at its facility. However, Avalon Hills was not charged with making a determination under all the factors of the medically necessary criteria. Even if Avalon Hills was a clinically appropriate option, it may not have been the only medically appropriate option and medical necessity requires treatment to occur in the least intensive setting appropriate. Given the evidence before Cigna, the court does not find Cigna's determination that a less intensive treatment could be utilized to be unreasonable.

The court finds it telling that Avalon Hills withdrew its initial appeal and waited for counsel to appeal Cigna's determination more than 5 months later. Cigna reviewed and decided the appeal in a reasonable manner. M.K.'s treatment records show ups and downs in her condition, but she remained medically stable and nothing indicates that the only reasonable treatment option for M.K. was 24-hour residential treatment. M.K. argues that the fact that she had difficulty when she was released for home visits demonstrates that she needed 24-hour residential treatment. However, it could be equally argued that if she had initially received some

level of treatment while she remained in her home setting, she could have been learning to deal with the stressors she faced at home throughout her course of treatment.

M.K. also attacks Cigna's use of its own guidelines, but the Visa Plan allows the administrators of the various component plans to adopt rules and regulations for the administration of the Plan that are consistent with applicable law. Both the POS Plan and the ERISA regulations recognize that the claim administrator can rely on internal guidelines. And, most significantly, Cigna's guidelines relating to residential treatment for eating disorders are consistent with the definition of medically necessary. Because there is no conflict between the Plan and Cigna's guidelines, the cases relied on by M.K. are not persuasive. Those case involved a conflict in some way between the administrators' guidelines and the plan's terms.

M.K. also cites *Smith v. Blue Cross Blue Shield*, 597 F. Supp. 2d 214 (D. Mass. 2009), but that case actually supports Cigna's position. In that case, the plan's reviewing physicians, applying internal criteria, denied residential treatment for mental health conditions. The court found that "substantial reliable evidence" supported the administrator's decision because "[e]ach doctor applied standardized medical criteria and reached a decision supported by the guidelines." *Id.* at 222.

The issue is not whether the court agrees with Cigna or thinks that Cigna's decision is the best decision. The issue is only whether Cigna's decision is supported by sufficient evidence in the record. The court concludes that Cigna's decision of medical necessity was grounded on a reasonable basis and considered in a timely and objective manner. M.K. was in a physically stable condition, she had never received any treatment for eating disorders or mental health issues, and a less intensive treatment could reasonably have been tried before 24-hour residential

11

treatment. There is nothing in Avalon Hills' records that contradict Dr. Patel's conclusions that a partial hospitalization could have been tried as a reasonable initial option. Therefore, the court affirms the Cigna's decision to deny benefits under the Plan.

## CONCLUSION

Based on the above reasoning, the court concludes that Cigna's decision to deny benefits under the Plan was reasonable and supported by substantial evidence in the record. Accordingly, M.K.'s appeal of the determination is DISMISSED. The Clerk of Court is directed to close the case. Each party shall bear its and her own fees and costs.

DATED this 14th day of October, 2014.

BY THE COURT:

_____
Dale A. Kimball,
United States District Judge